UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KRISTEN BRETTEL, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| OMRON SCIENTIFIC TECHNOLOGIES, INC. | ) CIVIL ACTION |
| and OMRON STI MACHINE SERVICES, INC., | ) NO. 14-13936-JGD |
| | ) |
| Defendants/ | ) |
| Third Party Plaintiffs, | ) |
| v. | ) |
| | ) |
| MADICO, INC., | ) |
| | ) |
| Third Party Defendant. | ) |

## MEMORANDUM OF DECISION AND ORDER ON MOTION OF
## OMRON DEFENDANTS FOR SUMMARY JUDGMENT

March 27, 2018

DEIN, U.S.M.J.

### I. INTRODUCTION

The plaintiff, Kristen Brettell, was injured while working on a laminating machine at the facility of her employer, Madico, Inc. ("Madico"). She brought this action against the defendants, Omron Scientific Technologies, Inc. and Omron STI Machine Services, Inc. (collectively "Omron"), alleging that Omron had been negligent in its inspection, testing and/or servicing of the laminating machine. Omron brought a Third-Party Complaint against Madico for contractual indemnification and breach of contract. This matter is presently before the court on "Defendants Omron Scientific Technologies, Inc.'s and Omron STI Machine Services, Inc.'s

Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56." (Docket No. 78). Therein, Omron is seeking judgment on all counts of the Amended Complaint on the grounds that Madico's modification of the equipment after Omron's work was completed constituted an intervening and superseding cause as a matter of law, and that Omron owed no duty of care to the plaintiff as a matter of law. Because this court finds that there are material facts in dispute, Omron's motion for summary judgment is DENIED.

## II. **STATEMENT OF FACTS**[1]

### **Madico's Retention of Omron**

Madico is a manufacturer of laminating and coating films for windows and other applications. It has a facility in Woburn, Massachusetts. Omron is a machine and safeguarding consulting company. It is hired by manufacturing customers to, among other things, conduct safety training, evaluate equipment, and recommend, design and install safety improvements. See PF ¶ 36; DR ¶ 36. In August 2009, Madico retained Omron to perform a machine safe-guarding assessment on equipment at the Woburn facility, including a composite coating/ laminating line, known internally at Madico as LC-3. SF ¶¶ 1-2. Specifically, Omron was retained to

- Perform on-site machine safeguarding assessment pursuant to relevant OSHA, ANSI, and NFPA standards and other applicable guidelines as identified by the customer for the equipment specified.

---

[1] Unless otherwise indicated, the facts are derived from Omron's Statement of Undisputed Material Facts ("SF __"); Plaintiff's Response to Omron's Statement of Undisputed Material Facts ("PR __"); Plaintiff's Statement of Additional Material Facts ("PF __"); and the Omron Defendants' Response to Plaintiff's Statement of Additional Material Facts ("DR __"). Since the parties have consecutively numbered their exhibits, they will all be cited as "Ex. __." Omron has greatly assisted the court by filing a Combined Rule 56.1 Statement of Undisputed Facts including all of the allegations of fact, responses thereto, and exhibits. (Docket No. 108).

- Identify risk level based on intended operator interface and maintenance requirements and recommend commensurate risk reduction measures for the associated equipment. Reduction measures to comply with applicable guidelines.
- Provide a complete machine safeguarding assessment documentation package including identified risk levels, risk reduction recommendations, and plan-view drawings as well as line item spreadsheet including estimated cost to bring each machine or process into compliance.

DR ¶ 43.

From approximately September 1-3, 2009, David Semenchuk, an assessor for Omron, visited Madico and conducted an inspection. SF ¶¶ 3-5. Ms. Brettell was aware that Omron had come to Madico to perform a safety evaluation of the laminating machine "to see what needed to be fixed or modified to make it safer." PR ¶ 35.

Mr. Semenchuk prepared an initial assessment report in which he identified the risk of serious injury to employees working the LC-3 laminating machine as "HIGH." SF ¶ 7; PR ¶ 7. After the initial report was issued, Mr. Semenchuk returned to Madico, met with various Madico employees to review his initial report, and issued a revised assessment report dated December 23, 2009. SF ¶¶ 8-9. It is disputed whether during these meetings Madico advised Mr. Semenchuk that workers needed access to the laminating area with the machine running to clean the roll. PF ¶ 51; DR ¶ 51. It is also disputed whether the parties discussed (and agreed to the possibility of) enclosing the laminating area entirely. See PF ¶ 56; DR ¶ 56. The revised report proposed an alternative safeguarding recommendation for the laminating platform of the LC-3. SF ¶ 10; PR ¶ 10. Of significance, the parties dispute whether either the initial report or the revised report identified the area where Ms. Brettell was injured as a potential area of injury. PF ¶ 54; DR ¶ 54. The parties also dispute whether Omron identified the risk to which

[3]

Ms. Brettell was exposed. Specifically, the plaintiff alleges, and the defendant denies, that Omron "never identified the transport idlers where Ms. Brettell was entrapped as a crush point or potential in-running nip point." PF ¶ 55; DR ¶ 55. Furthermore, the parties dispute whether Omron's suggested safety recommendations were viable or would adversely affect the operation and utility of the machine. See SF ¶ 10-11; PR ¶¶ 10-11, 13.

Madico did not retain Omron to do any further work after it issued its revised assessment report. SF ¶ 12. Rather, Paul Malburg, Madico's controls engineer, was responsible for implementing any safety modifications. PR ¶ 12.

### Madico's Work on the LC-3

It is undisputed that Mr. Malburg implemented some of Mr. Semenchuk's recommendations but not others. PR ¶¶ 14, 15. It is also undisputed that Madico, with the assistance of an outside mechanical engineering consultant, Gary Blaney, designed and installed a "clean air enclosure" around an area of the LC-3 machine. PR ¶¶ 16-17. While Omron contends that the clean air enclosure modified the work area and contributed to Ms. Brettell's injury, the plaintiff contends that the clean air enclosure did not involve the area where Ms. Brettell was hurt. See PR ¶ 16. The plaintiff also contends that since Omron never identified the area where Ms. Brettell was injured as a potential in-running nip or crush point, Madico was deprived of the opportunity to take steps to protect that area of the machine. See PF ¶ 58; DR ¶ 58; PR ¶¶ 16-19. Mr. Blaney was not aware of Omron's work, including its reports, and Omron was not aware of Mr. Blaney's work, including his designs. SF ¶¶ 20-22. The clean air enclosure was completed in late 2009. SF ¶ 23.

In January 2011, Madico purchased two Omron-branded safety mats and installed one in the area of the laminating platform of the LC-3 machine, and the other on the concrete floor alongside the LC-3 machine.  SF ¶ 24.  Omron contends that this installation was designed by Malburg of Madico and was not based on Omron's reports or recommendations.  SF ¶ 25.  The plaintiff, however, alleges that the safety mats were installed with Omron's approval.  PR ¶¶ 24-25.

### The Accident

On April 4, 2013, Ms. Bettell was working on the LC-3 machine.  See PR ¶ 27.  She observed a defect in the laminate surface and held a solvent soaked rag against the roll to clean it.  PR ¶ 28.  It is undisputed that as she was cleaning the idler roller, either the plaintiff's rag or rubber glove became caught against the film, and the moving web pulled her arm into the machine just before her elbow.  SF ¶ 30.  As a result, she suffered a crush injury to her right hand and arm.  PR ¶ 30.  There are disputed facts as to where the plaintiff was standing at the time of the accident, and how she reached the roller to clean it.  See SF ¶¶ 27, 29, 32; PR ¶¶ 27, 29, 32.

Additional facts will be provided below as appropriate.

### III. ANALYSIS

#### A. Standard of Review – Summary Judgment

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)) (additional citation omitted).  The burden is upon the moving party to show,

based upon the discovery and disclosed materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." PC Interiors, Ltd., 794 F. Supp. 2d at 275. The opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993). Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial. Id. at 841 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). The court affords "no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) (internal quotation marks and citation omitted). Rather, "[w]here, as here, the nonmovant bears the burden of proof on the dispositive issue, it must point to 'competent evidence' and 'specific facts' to stave off summary judgment." Id. (citation omitted).

Applying these principles to the instant case compels the conclusion that Omron's motion for summary judgment must be denied.

### B. Did Madico's Work Relieve Omron of Any Potential Liability?

Omron contends that its actions could not be a proximate cause of Ms. Brettell's injuries because Madico's subsequent installation of the clean air enclosure was the cause of her injuries, was not reasonably foreseeable by Omron, and constituted an intervening and superseding event. This court concludes that there are material facts in dispute which preclude the entry of summary judgment on this basis.

"A plaintiff claiming negligence must establish the basic elements of duty, breach of duty, cause in fact and proximate cause." Provanzano v. MTD Prods. Co., 215 F. Supp. 3d 134, 138-39 (D. Mass. 2016). As the First Circuit has explained:

> Under Massachusetts law, "[i]n addition to being the cause in fact of the injury [the but for cause], the plaintiff must show that the negligent conduct was a proximate or legal cause of the injury as well." *Kent v. Commonwealth,* 437 Mass. 312, 320, 771 N.E.2d 770 (2002). To establish proximate cause, a plaintiff must show that his or her injuries were within the reasonably foreseeable risks of harm created by the defendant's negligent conduct. *Id.; Poskus v. Lombardo's of Randolph, Inc.,* 423 Mass. 637, 639–41, 670 N.E.2d 383 (1996). Generally, intervening negligent conduct of a third person will not relieve the original tortfeasor from liability where such conduct was reasonably foreseeable. *Poskus,* 423 Mass. at 639–40, 670 N.E.2d 383; *Jesionek v. Mass. Port Authority,* 376 Mass. 101, 105–06, 378 N.E.2d 995 (1978).

Staelens v. Dobert, 318 F.3d 77, 79 (1st Cir. 2003). Thus, "[i]f a series of events occur between the negligent conduct and the ultimate harm, the court must determine whether those intervening events have broken the chain of factual causation or, if not, have otherwise extinguished the element of proximate cause and become a superseding cause of the harm." Ward v. City of Boston, 367 F. Supp. 2d 7, 15 (D. Mass. 2005) (quoting Kent, 437 Mass. at 320, 771 N.E.2d at

[7]

777). The question of proximate cause is generally one for a jury to decide, although summary judgment may be appropriate "when the evidence and the reasonable inferences drawn therefrom lead to but one conclusion." Staelens, 318 F.3d at 79 (citation omitted). In the instant case, however, there are disputed facts which preclude the entry of summary judgment.

As an initial matter, it is disputed whether the existence of the clean air enclosure caused the accident at all. Therefore, based on the instant record, the court cannot conclude as a matter of law that Madico's conduct contributed to or brought about Ms. Brettell's harm so as to relieve Omron from liability.

Moreover, it is the plaintiff's contention that Omron never identified the area in which Ms. Brettell was injured as a hazard, and that, if it had, Madico would have taken steps to eliminate the danger. Under such circumstances, a jury could find that even if the clean air enclosure contributed to Ms. Brettell's injury, the installation of the enclosure was foreseeable since Omron never identified the risk in that area.

Similarly, the facts relating to whether Omron and Madico discussed the possibility of enclosing the laminating the area, and the possible scope of such an enclosure, are also in dispute. Thus, there is evidence in the record from which a factfinder may conclude that Madico's installation of the clean air enclosure was foreseeable to Omron.

This discussion is not intended to be exhaustive. Suffice it to say, given the disputed material facts concerning whether or not Omron appropriately identified the risk of harm to which the plaintiff was ultimately exposed, and the disputed facts relating to how and why this accident happened, summary judgment is not appropriate. See Jones v. Cincinnati, Inc., 32 Mass. App. Ct. 365, 369-70, 589 N.E.2d 335, 338-39 (1992) (in suit against an equipment

manufacturer, it was appropriate to leave for jury to decide whether employer's conduct constituted a superseding cause of plaintiff's accident); Cocco v. Deluxe Systems, Inc., 25 Mass. App. Ct. 151, 155-56, 516 N.E.2d 1171, 1173 (1987) (evidence concerning modifications to machinery by employer "presented a jury issue on causation" in a personal injury suit brought by an employee against the manufacturer of the machine).

### C. Did Omron Owe the Plaintiff a Duty of Care?

Omron has moved for summary judgment on the basis that it owed no duty of care to Ms. Brettell as an employee of Madico. In light of the claims that Omron negligently failed to identify the risk which Ms. Brettell faced, that Madico would have made safety improvements in that area if the risk had been identified, and the fact that employees would likely be exposed to harm as a result of a failure to identify the risk, there are material facts in dispute that require the denial of the motion for summary judgment.

The existence of a duty of care is generally a question of law for the court to decide. See Jupin v. Kask, 447 Mass. 141, 146, 849 N.E.2d 829, 835 (2006). "The concept of 'duty' is not sacrosanct in itself, but is only an expression of the sum total of considerations of policy which lead the law to say that the plaintiff is entitled to protection. No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." Id. (internal punctuation and citation omitted). In the instant case, in light of the fact that Omron was hired to identify safety risks in connection with the use of machinery by Madico employees, it is reasonable for a duty of care to run to such employees.

As the Massachusetts Supreme Judicial Court has held:

> It is settled that a claim in tort may arise from a contractual relationship, ... and may be available to persons who are not parties to the contract.... **[A] defendant under a contractual obligation "is liable to third persons not parties to the contract who are foreseeably exposed to danger and injured as a result of its negligent failure to carry out that obligation."** ***Parent v. Stone & Webster Eng'g Corp.,*** **408 Mass. 108, 113–114, 556 N.E.2d 1009 (1990) (*Parent* ), quoting *Banaghan v. Dewey,* 340 Mass. 73, 80, 162 N.E.2d 807 (1959).** Where a contractual relationship creates a duty of care to third parties, the duty rests in tort, not contract, and therefore a breach is committed only by the negligent performance of that duty, not by a mere contractual breach. See *Anderson v. Fox Hill Village Homeowners Corp.,* 424 Mass. 365, 368, 676 N.E.2d 821 (1997), quoting *Abrams v. Factory Mut. Liab. Ins. Co.,* 298 Mass. 141, 144, 10 N.E.2d 82 (1937) ("Although the duty arises out of the contract and is measured by its terms, negligence in the manner of performing that duty as distinguished from mere failure to perform it, causing damage, is a tort").

LeBlanc v. Logan Hilton Joint Venture, 463 Mass. 316, 328, 974 N.E.2d 34, 43 (2012) (emphasis added).

The instant case is similar to Parent v. Stone & Webster Eng'g Corp., quoted above. In Parent, the plaintiff, an electrician, was injured while testing the voltage in an electrical distribution panel. He claimed that he would not have conducted the test as he did if the panel had been appropriately labelled "Danger High-Voltage." Id. at 110, 556 N.E.2d at 1010. Stone & Webster had been hired by Parent's employer as a project manager for a project which involved updating the electrical system, and was responsible for preparing an evaluation of the electrical system, including the distribution panel where Parent was injured. Id. at 114-15, 556 N.E.2d at 1013. In reversing summary judgment in favor of the defendant, the SJC held that Stone & Webster had "failed to demonstrate that it owed no duty to Parent." Id. at 116, 556 N.E.2d at 1013. As the Court ruled,

> Thus, there is an indication in the record that Stone & Webster, pursuant to the performance of its contractual duties, either did discover, or should have discovered, the fact that the distribution panel at issue here carried

> 2,300 volts and was not properly labeled. Further, the language of the 1982 contract contains support for the proposition that Stone & Webster should have corrected this hazard or brought it to the attention of Montaup. In view of these considerations, Stone & Webster has not demonstrated that a jury could find it unforeseeable to Stone & Webster that any negligent performance of its duties could pose serious risks to plant employees such as Parent, including the particular risk which actually materialized.

Id. at 115, 556 N.E.2d at 1013. Similarly, in the instant case "there is an indication in the record" that in furtherance of its contractual duties, Omron should have discovered the condition that caused the plaintiff's injuries, and brought it to the attention of Madico. Like Stone & Webster, Omron "has not demonstrated that a jury could find it unforeseeable to [Omron] that any negligent performance of its duties could pose serious risks to plant employees such as [Ms. Brettell], including the particular risk which actually materialized." Therefore, summary judgment is not appropriate.

Omron has attempted to avoid this conclusion by arguing that Parent cited to the Restatement (Second) of Torts § 324A in support of the proposition that "a claim in tort may arise from a contractual relationship" and that Ms. Brettell cannot satisfy the requirements of § 324A. See Omron Reply (Docket No. 107) at 2-3. Assuming, arguendo, that § 324A is controlling, summary judgment is still unwarranted. Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965). Despite Omron's protestations to the contrary, a jury might find that by negligently failing to identify the risk at the site where Ms. Brettell was injured, Omron increased the risk of harm. A jury could determine that Madico took no steps to render that area safer, although it would have taken such steps if the risk had been properly identified. Thus, if § 324A controls, Omron may still be found to have owed a duty of care to the plaintiff.

Finally, Omron argues that it has no duty of care to the plaintiff because she cannot establish that she relied on Omron's services. See Omron Mem. (Docket No. 79) at 15, 18-19. There is case law to the effect that tort liability to a potential beneficiary of a contractual obligation is limited "to cases where the plaintiff's harm was the foreseeable result of the defendant's negligence in that the plaintiff rightfully relied on the defendant and the defendant knew that the plaintiff would rely on his services or the defendant should have anticipated the plaintiff's reliance and resulting harm." Wilson v. James L. Cooney Ins. Agency, 66 Mass. App. Ct. 156, 163, 845 N.E.2d 1187, 1193-94 (2006) (internal punctuation and citations omitted). Assuming that these principles are applicable here, a jury may find that Madico's employees, including the plaintiff, relied on Omron to identify safety risks, and Omron, at a minimum, should have anticipated that the employees would rely on it to identify the safety risks. There is also evidence in the record that Ms. Brettell, in particular, knew that Omron was engaged in a safety study at the plant. Under such circumstances, a jury may find there was sufficient reliance to establish that Omron owed a duty of care to the plaintiff. Summary judgment is not appropriate.

## IV. **CONCLUSION**

For all the reasons detailed herein, the Omron Defendants' Motion for Summary Judgment (Docket No. 78) is DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge