UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KRISTEN BRETTEL, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> OMRON SCIENTIFIC TECHNOLOGIES, INC. ) <br> and OMRON STI MACHINE SERVICES, INC., ) <br> ) <br> Defendants/ ) <br> Third Party Plaintiffs, ) <br> v. ) <br> ) <br> MADICO, INC., ) <br> ) <br> Third Party Defendant. ) | CIVIL ACTION <br> NO. 14-13936-JGD |

## MEMORANDUM OF DECISION AND ORDER ON MOTION OF THIRD-PARTY DEFENDANT, MADICO, INC., FOR SUMMARY JUDGMENT

March 27, 2018

DEIN, U.S.M.J.

### I. INTRODUCTION

The plaintiff, Kristen Brettell, was injured while working on a laminating machine at the facility of her employer, Madico, Inc. ("Madico"). She brought this action against the defendants, Omron Scientific Technologies, Inc. and Omron STI Machine Services, Inc. (collectively "Omron"), alleging that Omron had been negligent in its inspection, testing and/or servicing of the laminating machine. Omron brought a Third-Party Complaint against Madico for contractual indemnification (Count I) and breach of contract (Count II). This matter is presently before the court on "Third Party Defendant Madico, Inc.'s Motion for Summary Judgment"

(Docket No. 75) pursuant to which Madico is seeking judgment in its favor on both counts of the Third-Party Complaint (Docket No. 48) ("Third-Party Compl."). For the reasons detailed herein, Madico's motion for summary judgment is DENIED.

## II. **STATEMENT OF FACTS**[1]

### **Madico's Retention of Omron**

Madico is a manufacturer of laminating and coating films for windows and other applications. It has a facility in Woburn, Massachusetts. Omron is a machine and safeguarding consulting company. SF ¶ 1. It is hired by manufacturing customers to, among other things, conduct safety training, evaluate equipment, and recommend, design and install safety improvements. Id.; OResp. ¶ 1. It is undisputed that on August 12, 2009, Omron sent a quotation to Madico to perform an assessment of the machinery at Madico (the "Quotation"). See SF ¶ 3; OResp. ¶ 3.[2] Included in the Quotation were "Terms and Conditions of Sale." SF ¶ 3; Ex. 3.

The Quotation provided in relevant part as follows:

> OMRON STI Machine Services, Inc. is pleased to provide an estimate for the following machine and process safeguarding assessment services for the (2) line coaters, (3) slitters and (3) mixers at your facility in Woburn, MA:

---

[1] Unless otherwise indicated, the facts are derived from Madico's Statement of Undisputed Material Facts included in its Memorandum of Law in Support of Its Motion for Summary Judgment (Docket No. 76) ("SF __") and Exhibits thereto ("Ex. __"), and Omron's Response to Madico Inc.'s Statement of Undisputed Material Facts (Docket No. 89) ("OResp. __") and Exhibits thereto ("OEx. __"). The court has considered Plaintiff's Response to Madico's Statement of Undisputed Material Facts as well as Plaintiff's Statement of Additional Material Facts and Exhibits. (Docket No. 85). However, this court has found it unnecessary to reach the issue addressed by the plaintiff, namely whether Madico owed her a duty of care. Therefore, the plaintiff's pleadings will not be cited.

[2] There is evidence in the record that Omron originally sent a quotation dated August 6, 2009, which was subsequently modified after discussion on August 12, 2009. See OResp. ¶ 3. However, Madico does not mention the earlier version and it was clearly superseded by the quotation of August 12th. Therefore, the earlier version will not be addressed herein.

[2]

- Perform on-site machine safeguarding assessment pursuant to relevant OSHA, ANSI, and NFPA standards and other applicable guidelines as identified by the customer for the equipment specified.

- Identify risk level based on intended operator interface and maintenance requirements and recommend commensurate risk reduction measures for the associated equipment. Reduction measures to comply with applicable guidelines.

- Provide a complete machine safeguarding assessment documentation package including identified risk levels, risk reduction recommendations, and plan-view drawings as well as line item spreadsheet including estimated cost to bring each machine or process into compliance.

Ex. 3. The "Terms and Conditions of Sale" attached to the Quotation included the following provision:

> 7. <u>Indemnity.</u> **Omron will indemnify, defendant and hold Customer harmless from and against losses, damages, suits and related costs and expenses ("Losses") arising out of claims of third parties for bodily injuries (including death) ... to the extent such Losses are legally determined to result solely from** a breach by Omron of its standard product warranty as set forth in the Standard Terms and Conditions or **from the sole negligence of Omron**; provided that Omron's liability hereunder shall in no event exceed the price of individual Products or the Services provided as to which such liability is claimed. Notwithstanding any other provision, **Customer shall indemnify, defend and hold harmless Omron** Companies and their officers, directors, shareholders, affiliates, agents and employees harmless (sic) **from and against all claims, liabilities, costs and expenses, including legal fees and costs (except those resulting from the willful misconduct or gross negligence of Omron), arising in any way in connection with (i) acts or omission of Customer or its employees or agents, (ii) Customer's use of the Products or System or the Services.**

<u>Id.</u> (emphasis added). In response to this Quotation, on August 18, 2009, George Zanni of Madico sent Scott Brayton of Omron Purchase Order No. M01133 for a "machine guarding assessment report" and "[e]xpenses for guarding assessment" in the amounts detailed in the Quotation. SF ¶ 4; Ex. 4.

## The Assessment Report

Omron sent one of its consultants, David Semenchuk, to Madico from September 1, 2009 through September 3, 2009, where he performed a safety assessment of the machinery. See SF ¶ 6; OResp. ¶ 6. While there, Mr. Semenchuk inspected numerous machines, spoke with Madico employees, observed employees perform a cleaning of the laminating machine with a solvent on a cloth when the product needed to be cleaned, and, in general, performed his own assessments regarding the equipment. SF ¶¶ 6-8.

Consistent with the Quotation, on October 13, 2009, Omron emailed Mr. Zanni of Madico its "Machine and Process Safeguarding Assessment Report and Risk Reduction Proposal" (the "Safeguarding Proposal"). SF ¶ 10; OEx. 2. Therein, Omron identified various safety hazards with the machinery, made a risk evaluation of each hazard, and made risk reduction (safeguarding) recommendations. E.g., OEx. 2 at 19-26. In the Safeguarding Proposal, Omron included safeguarding options and an applicable pricing structure to entice Omron's customers to further retain Omron to do the work to implement the safeguarding recommendations. OResp. ¶ 13. Omron also included in the Safeguarding Proposal a copy of "Terms and Conditions for Services and Systems," which would be included in any contract for further implementation work by Omron. See OEx. 2 at 69. These Terms and Conditions included an indemnification provision identical to the one quoted above.

After its receipt of the Safeguarding Proposal, Omron and Madico discussed the report and its recommendations. SF ¶ 15; OResp. ¶ 15. As a result, on December 23, 2009, Omron sent Madico a "Detailed Summary Spreadsheet" and "Machine and Process Safeguarding Assessment Report and Risk Reduction Proposal" ("Revised Proposal"). OResp. ¶ 15; OEx. 3.

Madico elected not to retain Omron to implement any of its safeguarding recommendations. SF ¶ 17; OResp. ¶ 17. According to Omron, it had no further contact with Madico until the instant litigation. OResp. ¶ 17.

### The Litigation

Ms. Brettell was injured on April 4, 2013 while working at Madico. SF ¶ 18. She was working at the LC-3 laminating machine. OResp. ¶ 22. While the exact manner of her accident is in dispute, it appears that while attempting to clean a sheet on the back side of the roller, her hand got caught by the film and pulled between the idler roller system and the guide bar, crushing her right hand. See SF ¶ 22. The parties disagree as to whether either of Omron's Safeguarding Proposals identified the area where Ms. Brettell was injured as a potential area of injury. SF ¶ 16; OResp. ¶ 16.

Ms. Brettell brought suit against Omron STI on September 5, 2014, and added Omron Machine Services as a defendant on January 23, 2015. OResp. ¶ 25. She contends that the defendants were negligent "in the inspection, testing and/or service of the laminating line machine and/or its component parts[.]" Am. Compl. (Docket No. 24) ¶¶ 4, 8. She alleges further that Omron acted negligently by "failing to follow and comply with generally accepted industry standards, codes and practices[,]" by "causing or allowing a dangerous and hazardous condition to exist[,]" and by "failing to give adequate and effective warnings and proper instructions regarding safeguarding the said laminating line machine[.]" Id. Ms. Brettell has not brought suit against Madico, and any such suit would be barred by the Workers' Compensation Act.

Omron obtained leave of court to file a Third-Party Complaint against Madico, which was filed on May 17, 2016. (Docket No. 48). Therein, Omron has asserted a claim for Contractual Indemnification (Count I) and a claim of Breach of Contract (Count II) for failing to indemnify Omron and hold it harmless against Ms. Brettell's claims. Omron has not alleged any direct negligence claim against Madico. However, it contends that Ms. Brettell's injuries were caused by Madico's conduct. Briefly, Omron contends as follows:

> The testimony and evidence in this case show clearly that Madico made independent decisions: to **act** in a manner contrary to Omron's recommendations and install a safety mat in the area of plaintiff's injury; to **omit** implementation of Omron's comprehensive recommendations; and to **use** parts, but not all, of Omron's machine safeguarding report. The evidence also shows that Mr. Malburg [a Madico engineer] made independent decisions about how his safety solutions would be integrated – physically, electrically, and functionally – into the equipment identified in Omron's assessment reports. As a result of those actions, omissions, and misuse of Omron's safeguarding assessment report by Mr. Malburg and other at Madico, the LC-3 machine was inadequately safeguarded, the risks identified by Omron were never reduced, and the hazardous conditions continued to exist for Madico's employees.

Omron's Opp. (Docket No. 87) at 11-12 (emphasis in original).

Additional facts will be provided below where appropriate.

### III. ANALYSIS

#### A. Standard of Review – Summary Judgment

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)) (additional citation omitted). The burden is upon the moving party to show, based upon the discovery and disclosed materials on file, and any affidavits, "that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." PC Interiors, Ltd., 794 F. Supp. 2d at 275. The opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993). Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial. Id. at 841 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). The court affords "no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) (internal quotation marks and citation omitted). Rather, "[w]here, as here, the nonmovant bears the burden of proof on the dispositive issue, it must point to 'competent evidence' and 'specific facts' to stave off summary judgment." Id. (citation omitted).

Applying these principles to the instant case compels the conclusion that Madico's motion for summary judgment must be denied.

[7]

B.      **Which Contract is at Issue?**

As an initial matter, Madico argues that Omron brought suit based on the indemnification provision contained in the Safeguarding Proposal and the Revised Proposal, and that since Madico never retained Omron to do the work proposed in those Proposals, it is not bound by the indemnifications provision contained therein. This argument may be technically correct. However, in light of the evidence that the contract that is at issue is the Quotation discussed above, which also contains an indemnification provision, and the representations to the court that discovery proceeded as if the Quotation was the contract at issue in this case, there are disputed facts which preclude the entry of summary judgment.

In the Third-Party Complaint, Omron asserts that Madico contracted with Omron "to perform a machine safeguarding assessment and proposal on some of its machinery" "subject to certain terms and conditions[,]" including an indemnification clause. Third-Party Compl. ¶¶ 7-10. This is clearly the August 2009 Quotation described above.[3] Omron then goes on to describe its delivery of the "Machine and Process Safeguarding Assessment Report and Risk Reduction Proposal ('Safeguarding Proposal'), dated October 13, 2009, recommending that Madico modify its machinery to include certain safeguarding equipment to help protect operators against certain hazardous conditions then existing[,]" and a "revised Safeguarding Proposal, dated December 23, 2009." Id. ¶¶ 11, 13. Both these "Safeguarding Proposals" contained "Terms and Conditions for Services and Systems," which included an indemnification

---

[3] Omron further alleges that the indemnification provision is the one included in the document entitled "Terms and Conditions of Services and Systems." Third-Party Compl. ¶¶ 8-9. As discovery has established, however, the document attached to the Quotation is entitled "Terms and Conditions of Sale." However, the indemnification provisions of the two documents are the same.

provision. Id. ¶¶ 12, 14. Thus, "Safeguarding Proposal" is used as a defined term for the post-assessment Proposals of October 13 and December 23, 2009.

Count I of the Third-Party Complaint is for Contractual Indemnification. Therein, Omron has alleged as follows:

> Pursuant to Paragraph 7 of the **Terms and Conditions of Services and Systems of the Safeguarding Proposals**, the Third-Party Plaintiffs are entitled to be held harmless and indemnified by Madico for the claims asserted herein by the plaintiff and for all damages, liabilities, losses, and reasonable expenses incurred in the defense of the plaintiff's allegations, including reasonable attorneys' fees.

Id. ¶ 19 (emphasis added). Thus, although Omron mentioned the Quotation in its recitation of facts, it based its indemnification claim on the October 13, 2009 and December 23, 2009 Safeguarding Proposals.

Omron now admits that it is not claiming that the October and/or December Safeguarding Proposals constitute enforceable contracts (since they were never accepted by Madico), but, rather, is relying on the indemnification provision included with the Quotation. Omron Opp. at 4, 7. Omron further argues that discovery was conducted on the basis that the Quotation was the operative document. Madico, however, seems to argue that this clarification arose for the first time in connection with the summary judgment motions, and that Omron should be limited to the allegations of the Third-Party Complaint. See Madico Reply (Docket No. 93) at 3-4.

Absent prejudice to Madico, it is possible for the complaint to be amended to conform to the evidence. See Sheppard v. 265 Essex St. Operating Co., LLC, -- F. Supp. 3d --, No. 16-11514-PBS, 2018 WL 1335359, at *3 (D. Mass. Mar. 14, 2018) (if new allegations are supported by "substantial evidence," complaint may be amended after discovery is complete and a party

has already moved for summary judgment); In re Rauh, 119 F.3d 46, 51-52 (1st Cir. 1997) (post-trial motions to amend a complaint to conform to the evidence under Fed. R. Civ. P. 15(b) should be "liberally allowed" if the opposing party agreed to try the matter, either "expressly or impliedly," and is not prejudiced by the amendment). However, Omron has not filed any such motion to amend, and that issue has not been addressed by the parties. As the record now stands, there are disputed facts as to whether Madico is a party to the contract containing the indemnification provision on which the Third-Party Complaint is based. Summary judgment is not appropriate.

The issue is further complicated by the fact that Madico seems to be arguing that it never accepted the Terms and Conditions which accompanied the Quotation, since it never signed the Terms and Conditions and only sent back a purchase order, which did not reference the Terms and Conditions. See SF ¶¶ 3-5. "[S]o long as the evidence does not point unerringly in a single direction but is capable of supporting conflicting inferences, the question of whether a contract has been formed between two parties is a question of fact to be determined by the factfinder." Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 7 (1st Cir. 1994). Assent to be bound to an agreement can be determined from the words and actions of each party. DeCaro v. Hasbro, Inc., 542 F. Supp. 2d 141, 153 (D. Mass. 2008). At the present juncture in the case, Omron cannot be faulted for not putting forward evidence surrounding Madico's alleged acceptance of the Terms and Conditions accompanying the Quotation, since it thought that Madico was not disputing the existence of the contract. Similarly, Madico cannot be faulted for not submitting such evidence since, by its terms, the Third-Party Complaint was not based on

the Quotation. In short, the issue whether there was an enforceable agreement containing the indemnification clause will have to await further proceedings.

  C.  **Interpretation of the Indemnity Clause**

The disputed facts concerning the existence of a contract do not end the inquiry. Madico argues that even if there was an indemnification agreement, it could not apply in the instant case. Thus, further analysis is warranted. For the reasons detailed herein, however, there are disputed facts which preclude the entry of summary judgment in Madico's favor.

The court's task "is to construe the indemnity clause fairly and reasonably in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." Providence & Worcester R.R. Co. v. Chevron U.S.A. Inc., 416 Mass. 319, 324, 622 N.E.2d 262, 265 (1993). In the instant case, Omron has admitted that it is only seeking "to enforce the indemnity clause due [to the] allegations of wrongdoing **by Madico.**" Omron Opp. at 8 (emphasis in original). The plaintiff has not alleged any negligence on the part of Madico, nor could she since the Workers' Compensation Act prohibits an employee from receiving direct compensation for work-related injuries from her employer. See MacGlashing v. Dunlop Equip. Co., Inc., 89 F.3d 932, 939 (1st Cir. 1996). Madico argues that since it cannot be found negligent in the instant case, Omron cannot prevail on its indemnification claim. This argument improperly limits the terms of the indemnification agreement, and fails to recognize that Omron can seek to establish Madico's negligence as part of its claim for indemnification.

As an initial matter, the fact that the plaintiff cannot maintain a negligence claim against Madico due to the Workers' Compensation Act does not negate Omron's ability to enforce its contractual indemnification agreement with Madico. See Spellman v. Shawmut Woodworking

& Supply, Inc., 445 Mass. 675, 679-80, 840 N.E.2d 47, 51 (2006); MacGlashing, 89 F.3d at 939. As detailed above, it is Omron's contention that Ms. Brettell's injuries were caused by Madico's actions. In order to prevail on its indemnification claim, Omron will have to establish that Madico's conduct was the cause of the accident. Madico has cited to no cases which preclude Omron from putting on such evidence at trial, even though the plaintiff is not blaming Madico for her injuries. Thus, the fact that the plaintiff has not asserted a negligence claim against Madico, and Madico is only liable if it is negligent, does not warrant the dismissal of the indemnification claim.[4]

Madico also argues that the indemnification provision does not apply in the instant case because it is only liable for indemnification for claims "arising in any way in connection with (i) acts or omission of [Madico] or its employees or agents, (ii) [Madico]'s use of the Products or System or the Services." Ex. 3. Madico further argues that its conduct must satisfy both (i) and (ii). Madico Mem. (Docket No. 76) at 13 ("Notably, the plain language of the contract contemplates that any indemnity obligation would emerge only if both clauses were satisfied." (emphasis in original)). Madico then analyzes the contract on the assumption that it relates to the proposed improvements recommended in the Safeguarding Proposals, and argues that it never used any of the products, systems or services described therein.

---

[4] If not found liable, Omron obviously will not be seeking indemnification for the amounts it had to pay the plaintiff. Nevertheless, under the indemnification agreement, Madico may have a duty to defend Omron, and Omron may be able to recover legal fees and costs from Madico even if Omron is not found liable to the plaintiff. On the other hand, if Omron is found liable, it may have an obligation to indemnify Madico under the indemnification agreement for the fees and expenses Madico incurred in defending this action. The parties have not addressed the appropriate scope of either Madico's or Omron's indemnification obligations, and they will not be explored further.

As detailed above, however, Omron is proceeding under the Quotation. Omron does not challenge Madico's interpretation that both clauses of the indemnification provision must be satisfied, but argues that Madico's misuse of the contents of the Safeguarding Proposals constitutes use of "services" under the indemnification clause. Since Omron's interpretation is feasible, summary judgment is not appropriate.

According to the "Terms and Conditions of Sale" attached to the Quotation, "Services" is defined simply as "Omron will sell to Customer the Services described in the Scope of Work (or equivalent document) delivered or approved in writing by an authorized employee of Omron." Ex. 3, Terms & Conditions of Sale ¶ 1. The Quotation is for "machine and process safeguarding assessment services," which are described as conducting the safeguarding assessment and providing "a complete machine safeguarding assessment documentation package[.]" Ex. 3. As quoted above, it is Omron's theory that Madico's misuse of the information and recommendations in the "documentation package" resulted in the condition which caused the accident. See Omron Opp. at 10-12. Thus, assuming that the Quotation is the contract at issue, Omron has raised disputed facts which would support coverage under the indemnification provision. Summary judgment is, therefore, denied.[5]

### D. Does Omron Owe the Plaintiff a Duty of Care?

Madico's final argument is that it does not have an obligation to indemnify Omron since the plaintiff's claim against Omron should be dismissed on the grounds that Omron does not

---

[5] Since Madico has not addressed Omron's interpretation of the indemnification provision as it relates to the Quotation, this court will not make a final interpretation as to whether the work done by Omron pursuant to the Quotation constitutes "services" under the contract. Omron's interpretation is plausible, however, thereby defeating summary judgment.

[13]

owe her a duty of care. Even assuming, arguendo, that Madico is correct, it may still have indemnification obligations for Omron's defense costs, including legal fees, under the terms of the indemnification provision. Therefore, this court declines to address this argument in the context of Madico's motion for summary judgment, leaving it, instead, for Omron's motion for summary judgment.

## IV. CONCLUSION

For all the reasons detailed herein, Madico's Motion for Summary Judgment (Docket No. 75) is DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge